UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RODNEY N.,

          Plaintiff,

    v.                                         **DECISION AND ORDER**

                                                            19-CV-6450S

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.
_____

        1.        Plaintiff Rodney N.[1] brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied his application for disability insurance benefits under Title II of the Act. (Docket No. 1.)  This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

        2.        Plaintiff protectively filed his applications with the Social Security Administration on August 17, 2012.  Plaintiff alleged disability beginning January 1, 2009, due to colitis; spondylosis, lumbar; depression/anxiety; and obesity (R.[2] at 15, 1796). Plaintiff had insurance coverage through September 30, 2013 (R. at 369, 15, 1796). Plaintiff's application was denied, and he thereafter requested a hearing before an administrative law judge ("ALJ").

        3.        On September 2, 2014, ALJ John Costello ("ALJ") held an in person hearing at which Plaintiff—represented by counsel—and Vocational Expert Julie Andrews

---

[1] In accordance with this Court's Standing Order of November 18, 2020, and consistent with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this Decision and Order will identify Plaintiff by first name and last initial.

[2] Citations to the underlying administrative record are designated as "R."

appeared and testified. (R. at 13, 1794, 28-65.) At the time of the hearing, Plaintiff was 47 years old with a high school education (R. at 21). His past relevant work included housekeeping cleaner (light exertion work) (R. at 21).

4. The ALJ considered the case *de novo* and, on October 24, 2014, issued a written decision denying Plaintiff's application for benefits (R. at 13, 1794). After the Appeals Council denied Plaintiff's request to review the ALJ's decision (R. at 1, 1809), Plaintiff filed an action seeking judicial review, Rodney N. v. Berryhill, No. 16CV6804. The parties reached a stipulation to remand, Rodney N., No. 16CV6804, Docket No. 20 (Jan. 11, 2018, Feldman, Mag. J.) (R. at 1789). On remand, the Appeals Council sent the case to the ALJ to evaluate opinions of treating physicians Drs. Addisu Mesfin (R. at 4548-49, 1021-24; Docket No. 9, Pl. Memo. at 3-4, 6-7) and Jason Costa (R. at 1786).

5. On January 22, 2019, the ALJ held the remand hearing in person at which Plaintiff—again represented by counsel—and Vocational Expert Peter Manzi appeared and testified (R. at 1366, 1754-83). Plaintiff sought closed period of disability from January 1, 2009, to July 1, 2017 (R. at 1899), when Plaintiff returned to full time work (R. at 1366). The ALJ, however, first needed to determine if Plaintiff established disability prior to the date of last insured, September 30, 2013, before considering the closed period to July 2017 (R. at 1366).

6. On February 19, 2019, the ALJ again considered the case *de novo* and rendered a second written decision denying Plaintiff's application for benefits (R. at 1366). The ALJ concluded that there was not sufficient evidence of disability prior to the date of last insured. The ALJ considered additional medical evidence, of approximately

4,000 pages, "nearly all of which covers a period of time after the period under adjudication, well after the date last insured" (R. at 1366-67).

7.   Following this decision on remand, Plaintiff filed the current action, challenging the Commissioner's final decision.[3] (Docket No. 1.)

8.   Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure.  (Docket Nos. 9, 10.)  Plaintiff filed a response on February 20, 2020 (Docket No. 11), stating that no reply was necessary (id. at 1), at which time this Court took the motions under advisement without oral argument.  For the reasons that follow, Plaintiff's motion is denied, and Defendant's motion is granted.

9.   A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 26 L.Ed.2d 842 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

10.   "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the

---

[3]The ALJ's February 22, 2019, decision became the Commissioner's final decision on this matter because of the remand from this Court and the Appeals Council.

evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams <u>ex rel.</u> Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review."  Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

11. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act.  See 20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled.  482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).

12. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed"

>impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

13. Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, supra, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); see also Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

14. The ALJ analyzed Plaintiff's claim for benefits under the process set forth above. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity from his alleged onset date of January 1, 2009, through his date last insured of September 30, 2013. (R. at 1369, see id. at R. at 15.) At step two, the ALJ found that Plaintiff has the following severe impairment:  colitis; spondylosis, lumbar; depression/anxiety; and obesity. Id. at 1369. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically

5

equals any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id. at 1370-71.

15. Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work except he can only occasionally perform all 6 posturals (stooping, kneeling, crouching, balancing, climbing, and crawling); he must work in an environment with a restroom nearby; and he can engage in simple (one to two step) tasks and occasionally interact with co-workers and the general public. (R. at 1371; see id. at R. at 17.)

16. At step four on remand, the ALJ found Plaintiff was unable to perform any past relevant work. (R. at 1377-78.) At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. Although Plaintiff can perform light work, he has additional limitations that warranted consideration by the Vocational Expert. The expert opined that a claimant similar to Plaintiff in RFC, age, education, and work experience could perform such jobs as copy machine operator (light) and collator operator (light). (R. at 1379.) Accordingly, the ALJ found that Plaintiff is not disabled. (R. at 1379.)

17. Plaintiff argues that the RFC determination is not supported by substantial evidence because the ALJ failed to consider the opinions of treating orthopedic specialist Dr. Jason Costa, who treated Plaintiff after the date of last insured. He contends that the ALJ had an affirmative duty to develop the record (Docket No. 9, Pl. Memo. at 15). He faults the ALJ for rejecting Dr. Costa's opinions and whether those opinions should be given retrospective effect to reach back to the period prior to the date of last insured (id. at 1, 7-9). Plaintiff argues that the ALJ erred in omitting Dr. Costa's November 2013

handicap parking application (R. at 160; Docket No. 9, Pl. Memo. at 1, 7), November 2014 opinions (Docket No. 9, Pl. Memo. at 1, 7-8, 18-24; R. at 1006-09 (RFC questionnaire)), and the ALJ erred in failing to evaluate Dr. Costa's January 16, 2015, opinion (R. at 1359-62 (second RFC questionnaire); Docket No. 9, Pl. Memo. at 1, 8-9, 21-23).

18. For the reasons that follow, this argument is rejected.

19. Much of the Administrative Record here postdates the date last insured of September 30, 2013, to include the closed period to July 1, 2017. As noted by the ALJ (R. at 1366), this material cannot be considered until Plaintiff first establishes that he was disabled as of September 30, 2013.

20. The Appeals Council remanded to have consideration of the opinions of Drs. Costa and Mesfin (R. at 1786, 1376), whom the Appeals Council believed treated Plaintiff prior to September 30, 2013 (R. at 1786). The Appeals Council noted that Dr. Costa treated Plaintiff before the last date insured (R. at 1786, citing R. at 1006-09 (Dr. Costa's Nov. 21, 2014, opinion), 1357-62 (Dr. Costa's Jan. 16, 2015, opinion)). This Court next considers whether this was the case.

21. On October 9, 2012, Plaintiff was treated for severe back pain (R. at 789). On October 25, 2013, Dr. Costa examined Plaintiff for knee pain and swelling Plaintiff suffered in September 2013 (R. at 903-05, 855; Docket No. 9, Pl. Memo. at 5). Dr. Costa noted possible meniscal tear and prescribed conservative therapy (R. at 904; Docket No. 9, Pl. Memo. at 5-6). On November 21, 2013, Dr. Costa completed Plaintiff's handicapped parking permit application, noting that Plaintiff had a permanent disability from lumbar spinal stenosis that caused severe limitation in walking for prolonged periods (R. at 160; Docket No. 9, Pl. Memo. at 6, 7). On April 24, 2014, Dr. Costa examined

7

Plaintiff again for his chronic left knee pain, with Plaintiff complaining of stable swelling and mild to moderate pain; Dr. Costa referred Plaintiff to physical therapy (R. at 946-47; Docket No. 9, Pl. Memo. at 6).

22. Dr. Costa opined in a physical RFC questionnaire on November 21, 2014, that Plaintiff had ulcerative colitis, chronic low back pain, lumbar spinal stenosis, and lumbar disc herniation, concluding that Plaintiff had chronic pain with limitation and functionality (R. at 1006-09; Docket No. 9, Pl. Memo. at 7). In January 2015, Dr. Costa again rendered a physical RFC questionnaire opining that Plaintiff needed to change positions, that he could perform less than sedentary work, with the ability to sit/stand for about four hours in an eight-hour workday due to his low back pain (R. at 1359-62, 1376; Docket No. 9, Pl. Memo. at 8-9).

23. On the issue whether Plaintiff was disabled prior to his date last insured on remand the ALJ observed that Dr. Costa treated Plaintiff after September 2013 (R. at 1376). The ALJ thus gave little weight to Dr. Costa's opinions, since they were rendered subsequent to the date of last insured (R. at 1376). Plaintiff did not ask if these opinions were retrospective or what was the period of time they covered; his representative did not approach Dr. Costa for clarity because Dr. Costa had ceased treating Plaintiff (R. at 1376-77).

24. Defendant argues that Dr. Costa's opinions are outside the period of coverage (post-September 2013) (Docket No. 10, Def. Memo. at 8, 10) and Defendant is correct. Dr. Costa's opinions in this record are after the date last insured.

25. Defendant also denies that the ALJ had a duty to develop the record and recontact Dr. Costa regarding Plaintiff's condition to Sept. 2013 (id. at 9). On a related

note, Defendant contends that Dr. Costa was not Plaintiff's "treating physician" during the relevant period (id. at 10).

26. Although the Appeals Council cited to Strong Memorial Hospital Internal Medicine medical records from August 2012 to November 2014 to conclude that Dr. Costa (a resident at Strong Memorial Hospital (R. at 773-1005; Docket No. 9, Pl. Memo. at 4)) treated Plaintiff before September 2013, Dr. Costa's references in Strong Memorial Hospital's records postdate September 2013. The exhibit part of the Strong Memorial Hospital records was dated November 25, 2014 (R. at 1009, 1006-09), while the separate record from Dr. Costa was entered January 16, 2015, and the record noted that it postdated the date last insured (R. at 1357-62). Even the application for handicapped parking permit was filed months after the last date insured (cf. R. at 160).

27. The ALJ on remand did consider these records despite being after the date last insured (R. at 1376).

28. The ALJ also noted this failure to contact Dr. Costa to learn whether his opinions were retrospective (R. at 1376-77). Plaintiff's counsel stated that he did not attempt to contact Dr. Costa because Plaintiff ceased to be treated by him and that Plaintiff's current treater (Dr. Mesfin) did not answer the same question. Plaintiff explained that he was no longer a patient of Dr. Costa and he had only contacted his remaining doctor, Dr. Mesfin (R. at 1764-65).

29. Further, Plaintiff's counsel agreed to close the hearing and did not seek the ALJ's assistance to develop the record by contacting Drs. Costa and Mesfin based upon Dr. Mesfin not responding to the request (R. at 1782).

9

30. While the ALJ has the duty to develop the record, Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996) (Docket No. 9, Pl. Memo. at 15), the ALJ here fulfilled that duty by inquiring of Plaintiff's counsel about his efforts to obtain further information from Dr. Costa and giving Plaintiff the opportunity to keep the record open which counsel declined, see Gonzalez v. Colvin, No. 15CV767, 2018 WL 1040250, at *4 (W.D.N.Y. Feb. 24, 2018) (Telesca, J.) (Docket No. 10, Def. Memo. at 9-10); see also Jordan v. Comm'r, 142 F. App'x 542, 543 (2d Cir. 2005) (summary Order). ALJs now have the discretion to seek further information and recontact sources, see "How We Collect & Consider Evidence of Disability," 77 Fed. Reg. 10,651, 10,651 (Feb. 23, 2012) (codified at 20 C.F.R. pts. 404, 416) (id. at 10).

31. The record here has no pre-September 2013 evidence from Dr. Costa and no declaration that the post-date last insured evidence refers back to September 2013. The ALJ correctly gave little weight to Dr. Costa's post-insured opinion. Thus, Plaintiff's Motion for Judgment (Docket No. 9) to remand on this ground is denied and Defendant's Motion (Docket No. 10) on this point is granted.

32. The Appeals Council also remanded (R. at 1786) for the ALJ to consider the opinion of Dr. Addisu Mesfin (R. at 4548-49, 1021-24; Docket No. 9, Pl. Memo. at 3-4, 6-7). Plaintiff argues that Dr. Mesfin treated him before and after the date last insured and thus the ALJ erred in giving the doctor's opinion little weight (Docket No. 9, Pl. Memo. at 16).

33. Defendant counters that the ALJ had no duty to recontact Dr. Mesfin to establish whether his opinion was to be applied retrospectively (Docket No. 10, Def. Memo. at 9-10). Plaintiff's counsel stated that clarification from Dr. Mesfin was not

forthcoming and later closed the record and declined to keep it open to await a response from Dr. Mesfin (id.; R. at 1764, 1782).

34.     For the reasons stated upholding the discretion in not re-contacting Dr. Costa, the ALJ did not abuse his discretion in not re-contacting Dr. Mesfin.  The ALJ inquired from Plaintiff's counsel and implicitly gave Plaintiff the opportunity to hold open the record for re-contact of Dr. Mesfin and Plaintiff declined deeming further contact futile (R. at 1782).

35.     On November 26, 2012, Plaintiff was referred to Dr. Mesfin, a spine surgeon (R. at 4548-49; Docket No. 9, Pl. Memo. at 3).  Dr. Mesfin examined Plaintiff on December 11, 2012, for low back pain (R. at 4549; Docket No. 9, Pl. Memo. at 3).  Lumbar spine radiographs showed lumbar degenerative scoliosis and an MRI demonstrated disc protrusion at L4-5 and L5-D1 (R. at 4551).  Dr. Mesfin recommended core strength training and said surgery was not warranted because Plaintiff would only have a fifty percent chance of improvement (R. at 4551; Docket No. 9, Pl. Memo. at 3).

36.     Dr. Mesfin examined Plaintiff again in August 2014 and September 2014 (R. at 4590, 4602; Docket No. 9, Pl. Memo. at 4).

37.     The ALJ nevertheless gave little weight to Dr. Mesfin's opinion because they postdated the date last insured (R. at 1376), despite the 2012 records.  The ALJ faulted Plaintiff for not asking Dr. Mesfin the period covered by the post-hearing opinions and Dr. Mesfin when asked did not respond to clarify (id.).  Dr. Mesfin also did not indicate when he began treating Plaintiff (R. at 1377, 1021-24 (Nov. 21, 2014, RFC questionnaire)) to determine the duration of a treating relationship to establish the appropriate weight to be given to the doctor's view.  The ALJ gave Dr. Mesfin's opinion less weight because

the form failed to indicate the dates covered by the opinion (R. at 1377).  The ALJ declined to give that opinion retrospective application, resting on Plaintiff's counsel's concession that the opinions were not retrospective (R. at 1377) and probably would not be supplemented given the lack of cooperation from Dr. Mesfin.  Plaintiff did testify that he was a patient of Dr. Mesfin since 2011 (R. at 1764-65).  Review of the transcript does not reveal a concession that as to the opinion being retrospective; instead, it reveals a lack of cooperation from the doctor and Plaintiff not seeking to press the matter.

38. The record from Dr. Mesfin before date of last insured was from December 11, 2012, when Plaintiff complained of low back pain (R. at 4549).  He complained of pain at level of 4 out of 10 which was treated with over-the-counter medication and Norco (or hydrocodone) (R. at 4549).  Dr. Mesfin prescribed exercise and recommended that Plaintiff stop smoking to improve his disc health (R. at 4551).  This record by itself does not establish Plaintiff's disability.

39. The ALJ did not err in giving little weight to Dr. Mesfin.  Therefore, so much of Plaintiff's Motion for Judgment (Docket No. 9) for the consideration of Dr. Mesfin is denied and Defendant's Motion (Docket No. 10) on this point is granted.


IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 9) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 10) is GRANTED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.


Dated:		June 14, 2021
		Buffalo, New York

                                                              s/William M. Skretny
                                                            WILLIAM M. SKRETNY
                                                          United States District Judge